United States District Court
Middle District of Florida
Jacksonville Division

**JASMINKA MASINOVIC,**

 *Plaintiff,*

v.                  N<small>O</small>. 3:20-cv-573-PDB

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

___

# Order

 Jasminka Masinovic brings this action under 42 U.S.C. § 405(g) to review a final decision of the Acting Commissioner of Social Security denying her application for disability insurance benefits. Doc. 1. Under review is a decision by an Administrative Law Judge (ALJ) signed on July 26, 2019. Tr. 15–26. Summaries of the law, procedural history, and administrative record are in the ALJ's decision, Tr. 15–26, and the parties' briefs, Docs. 21, 22, and not fully repeated here.

 Masinovic contends the ALJ erred in determining her residual functional capacity (RFC) by giving little weight to her treating physician's opinions. Doc. 21 at 3–22. The Acting Commissioner disagrees. Doc. 22 at 5–10.

I.    Background

Masinovic was born in 1967. Tr. 190. She worked until getting injured on March 16, 2011, Tr. 37, 190, after which she applied for benefits, Tr. 91–92. She received a "partially favorable" decision on January 5, 2016. Tr. 86–105. The ALJ found she had been disabled to September 6, 2012, when her treating physician cleared her to return to work because she had "reached maximum medical improvement … with no permanent partial impairment." Tr. 91–105.

Masinovic applied for benefits again in December 2016. Tr. 190–96. She asserted she had undergone a spinal operation, cannot use her left arm, and has lower-back and left-leg pain. Tr. 209. Her alleged disability onset date is January 6, 2016. Tr. 34–35. Her date last insured is December 31, 2016. Tr. 34–35.

Masinovic proceeded through the administrative process, failing at each level. Tr. 1–6, 15–26, 120–22, 124–28. This action followed. Doc. 1.

II.   Evidence

The ALJ conducted a hearing on June 19, 2019. Tr. 33–55. Masinovic testified about the period of alleged disability (January 6 to December 31, 2016). According to her, she could lift less than a gallon of milk in either hand. Tr. 40. She could sit less than an hour before needing to lie down, stand up, or "move the position a little." Tr. 40–41. She could stand less than a half hour before needing to lie down "or do something or move." Tr. 41. She could walk "about ten minutes or so. About three blocks. … Sometimes less than that." Tr. 41. Her medication made her "very sleepy." Tr. 39. She had "bad days more than good days," staying in bed approximately three days a week. Tr. 42. Even

on good days, she needed to lie down multiple times, sometimes for ninety minutes. Tr. 44. She could dress and bathe herself but could not do much housework. Tr. 42–43. She drove only to the doctor or to pick up medication. Tr. 43.

Besides the testimony, the ALJ considered medical records that Masinovic had submitted from Family Medical Centers, Tr. 290–95, and Coastal Spine & Pain Center, Tr. 308–54. Her treatment at Family Medical Centers remained consistent before and during the relevant period, Tr. 290–301, and as of the day after the alleged disability onset, she reportedly enjoyed walking, Tr. 295.

Dr. Haitao Zhang, a pain specialist, treated Masinovic at Coastal Spine & Pain Center. Tr. 308–95. He described her appearance as "alert, cooperative, appropriately groomed, [and] in no acute distress." Tr. 309, 315, 319. Her manual muscle strength in her shoulders, elbows, hands, and knees was consistently 5/5 (except for once when she had 4/5 in the left shoulder, elbow, and hand). Tr. 310, 316, 320, 323, 325. She had a decreased range of motion in her spine, with mild to moderate tenderness and spasms. Tr. 310, 316, 320, 323, 325–26. She received cervical epidural injections to manage pain, Tr. 311, 330, 339, 341, 349–50, and was prescribed hydrocodone, with no reported side effects, Tr. 308, 314, 318, 322, 325–26, 328, 332, 337, 343, 347, 351. Her treatment was described as conservative, Tr. 308, 318, and at several visits, she reported that treatment had improved her pain, function, and activity tolerance, Tr. 322, 325, 328, 343. At two visits (February 2016 and May 2016) she reported taking pain medication only sparingly. Tr. 337, 351.

Dr. Zhang performed a functional capacity evaluation (FCE) in November 2016. Tr. 396–401. His opinions in the FCE were based on his

3

observations and Masinovic's subjective reports. Tr. 396–97. For the thirty days before the FCE, Masinovic reported a moderate maximum pain level of 6/10. Tr. 398.

Dr. Zhang opined Masinovic had "significant left hand grip weakness," Tr. 396, and needed to avoid most physical movement involving her back and legs, Tr. 397. He suggested she was unable to meet the demands of even sedentary jobs. Tr. 397. He found she could sit forty-five minutes before needing to stand and could stand twenty to thirty minutes at a time. Tr. 400. In an eight-hour workday, she could stand or walk less than two hours and sit four hours. Tr. 400. She would need unscheduled thirty- to forty-five-minute breaks every two hours, she could never lift ten pounds or more and could only occasionally lift less, and she was likely to be absent from work four days a month. Tr. 400–01. She would need to lie down for two to three hours in an eight-hour period. Tr. 401.

Dr. Zhang provided another opinion in April 2019, which he indicated related back to the relevant period. Tr. 604–14. According to that opinion, Masinovic could stand or walk ten to fifteen minutes at a time for a total of less than two hours during an eight-hour workday; sit ten to fifteen minutes at a time followed by five to ten minutes of moving around, though she could sit a total of eight hours in an eight-hour workday; lift up to five pounds; occasionally finger, reach, handle, and feel with both hands; rarely simply grasp with her right hand; and never simply grasp with her left hand. Tr. 604–05. She would frequently require breaks in the eight-hour workday in addition to the fifteen-minute morning and afternoon break and the thirty-minute lunch break allowed by employers, and she experienced at least four "bad days

4

per month during which [her] symptoms [were] increased and [she] would not be able to complete an 8 hour work shift." Tr. 605.

## III. ALJ's Decision

The ALJ proceeded through the five-step sequential process in 20 C.F.R. § 416.920(a)(4), considering the period from January 6 to December 31, 2016.

At step one, the ALJ found Masinovic had not engaged in substantial gainful activity. Tr. 17. At step two, the ALJ found Masinovic had suffered severe impairments of disorders of the spine, myalgia, hypothyroidism, affective disorder, and anxiety disorder. Tr. 17. At step three, the ALJ found Masinovic's impairments singularly or in combination had not met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17.

The ALJ found Masinovic had possessed the RFC to perform light work with additional limitations:

> [She is capable of] lifting up to 20 pounds occasionally and lifting/carrying up to 10 pounds frequently; standing/walking for about 6 hours and sitting for up to 6 hours in an 8-hour workday with normal breaks. She can occasionally climb ladders, ropes, or scaffolds, and occasionally climb ramps or stairs. She must avoid concentrated exposure to hazards such as the use of moving machinery and unprotected heights. Work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine workplace changes. The claimant is limited to no interaction with the public, and only occasional interaction with coworkers and supervisors.

Tr. 19 (emphasis omitted).

In determining Masinovic's RFC, the ALJ gave little weight to Dr. Zhang's opinions. Tr. 22. The ALJ determined the 2016 opinions in the FCE

5

were "largely based on the claimant's subjective complaints and presentation at the one-time testing session, which is not entirely consistent with objective findings and the course of treatment provided by treating healthcare providers during the 12-month period relevant to this discussion." Tr. 22. The ALJ determined the 2019 opinion, though reportedly relating back to the relevant period, "was provided more than two years after the expiration of the claimant's insured status" and was inconsistent with treatment records during the relevant period. Tr. 22.

At step four, the ALJ determined Masinovic had not been able to perform her past relevant work. Tr. 23. At step five, the ALJ determined Masinovic had been able to perform jobs that had existed in a significant number in the national economy. Tr. 25. Thus, she found Masinovic had not been disabled. Tr. 25.

## IV. Standard of Review

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The court may not decide facts anew, reweigh evidence, make credibility determinations, or

substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court need not "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

## V. Law and Analysis

Masinovic contends the ALJ erred in determining her RFC by giving little weight to Dr. Zhang's opinions. Doc. 21 at 3–22.

The SSA issued revised regulations for weighing medical evidence for applications filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844 (Jan. 18, 2017), *amended by* 82 Fed. Reg. 15,132 (Mar. 27, 2017). Because Masinovic applied for disability insurance benefits in December 2016, the old regulations apply.

A treating physician's opinions "must be given substantial or considerable weight unless there is good cause to discount them." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoted authority and internal quotation marks omitted). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id.*

The ALJ's reasons for giving little weight to Dr. Zhang's opinions amount to good cause, and substantial evidence supports the reasons. Masinovic's

primary-care records provide little detail, but they show that her treatment was consistent before and after the alleged disability onset date and that the day after the alleged onset date she reported enjoying walking. Tr. 290–301. Dr. Zhang's records show full strength in Masinovic's shoulders, elbows, hands, and knees. Tr. 310, 316, 320, 323, 325. Though she had a decreased range of motion in her back, spasms and tenderness were only mild to moderate. Tr. 310, 316, 320, 323, 325–26. She consistently appeared to be in no acute distress. Tr. 309, 315, 319. Dr. Zhang described her treatment as conservative, and she reported on multiple occasions that the treatment improved her pain and abilities. Tr. 308, 318, 322, 325, 328, 343. She twice reported taking her medication only sparingly. Tr. 337, 351.

As the ALJ observed, Dr. Zhang's 2016 opinions in the FCE were largely based on Masinovic's subjective reporting of her symptoms and capabilities. Tr. 22, 397. Dr. Zhang's findings that she had significant left-hand weakness, could barely use her hands or lift even light weight, had severe walking limitations, and could not perform even sedentary work, Tr. 396–400, are inconsistent with the medical records indicating she had full hand strength, enjoyed walking, was treated conservatively, and experienced pain relief from her medications, which she twice reported taking only sparingly, during the alleged period of disability. Tr. 295, 310, 316, 320, 322–23, 325, 328, 337, 343, 351. The opinions are also inconsistent with Masinovic's representations that she could live independently, adequately tend to her personal-care needs, prepare at least simple meals, drive, and shop. Tr. 233–36.

As the ALJ observed, the objective medical evidence also fails to support Dr. Zhang's even more restrictive April 2019 opinion. (There are inconsistencies between Dr. Zhang's 2016 and 2019 opinions, including how

8

long Masinovic could sit before needing to move and how long she could stand or walk.) The conflicts between Dr. Zhang's opinions and the medical evidence—including his own treatment notes—justify the ALJ's decision to assign the opinions little weight.

Masinovic emphasizes the ALJ failed to discuss Dr. Zhang's 2016 opinions "in any particular way," failed to identify Dr. Zhang as a treating source, and discussed Dr. Zhang's opinions "in isolation from each other" even though "they support and are consistent with each other in their agreement that her ability to work is more limited than the … RFC describes." Doc. 21 at 13–16. But the ALJ was not required to discuss Dr. Zhang's opinions in a particular way. The ALJ discussed the 2016 and 2019 opinions and explained that she gave them little weight because they were inconsistent with primary-care treatment notes. Tr. 22. Masinovic is correct that the ALJ did not identify Dr. Zhang as a treating source when discussing the opinions, *see* Tr. 22, but she fails to show harmful error. Dr. Zhang's opinions conflicted with his treatment notes, so they were entitled to little weight. Identifying Dr. Zhang as a treating source would not have changed the outcome. Masinovic also fails to show that the ALJ's isolated discussions of the opinions was harmful error. The opinions were entitled to little weight, and their limited consistency in indicating Masinovic was more restricted than the ALJ found is undermined by their overall inconsistency with each other and the treatment notes.

Masinovic contends the ALJ's rejection of Dr. Zhang's 2016 opinions in the FCE as largely based on subjective complaints is "perplexing" because "by its nature an FCE is an objective examination that *explicitly* evaluates an individual's capacity to perform work activities related to her employment."

9

Doc. 21 at 16–17. This contention is unpersuasive because Dr. Zhang explicitly stated the opinions are based on Masinovic's self-reported pain. Tr. 396–98.

Masinovic argues the ALJ's assertion that the FCE findings are inconsistent with her course of treatment and accompanying notes is incorrect because Dr. Zhang noted that she had "failed conservative treatment" and her Gabapentin had been increased. Tr. 21 at 17–18. This argument does not warrant reversal because although the treatment notes indicate "failed conservative treatment" at times, Tr. 308, 332, 347, and an increase in Gabapentin, Tr. 290, they consistently indicate improvement with treatment, generally low to moderate pain levels, and consistently good or full strength, Tr. 322, 325, 328, 343.

Masinovic argues, "The ALJ highlighted that she 'sparingly used' pain medication but overlooked that she expressed financial concerns and delayed ablation of the cervical facet joint due to cost." Doc. 21 at 18 (quoting Tr. 351). Although "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability, … poverty excuses noncompliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). But if an ALJ's determination that a claimant is not disabled is "not significantly based on a finding of noncompliance," the failure to consider the ability to pay is not reversible error. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Here, whether Masinovic's sparing use of medication was due to financial hardship is unclear. In the treatment notes, Dr. Zhang says only that she delayed an ablation for financial reasons, Tr. 351; he says nothing of whether she could afford medication. Because the ALJ's determination that Masinovic was not disabled was not significantly based on her sparing use of medication, to the extent there was any error, the error was not reversible.

Masinovic argues the ALJ's decision to credit the opinion of the state agency medical consultant at the reconsideration level "conflicts with Agency policy" because the consultant failed to discuss Dr. Zhang's 2016 opinions and findings from the FCE. Doc. 21 at 20–21. Masinovic is correct that an ALJ must "evaluate the degree to which [a consultant's] medical opinions consider all of the pertinent evidence … including medical opinions of treating … sources," 20 C.F.R. § 404.1527(c)(3), but she fails to show harmful error. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that opinion." *Id.* § 404.1527(c)(4). Based on Masinovic's medical records (including some from Dr. Zhang), Tr. 72–79, the consultant opined that Masinovic could perform a light range of exertional work and simple, repetitive tasks in a socially limited environment, Tr. 81, 83. The consultant failed to consider Dr. Zhang's 2016 opinions and findings from the FCE, but as discussed, they were entitled to little weight, and the consultant's opinion was consistent with the medical records. Because of this consistency, it was entitled to "more weight," which the ALJ gave it.

Masinovic argues "the ALJ impermissibly relied on her lay assessment to reject the opinions of [her] treating providers, the only treating or examining opinions of record to assess [her] functional limitations." Doc. 21 at 22. To the contrary, the decision shows the ALJ relied not on a "lay assessment" but on the medical evidence the treating provider produced. Tr. 19–23.

In short, the ALJ stated the reasons she was giving Dr. Zhang's opinions little weight, the reasons amount to good cause, and substantial evidence supports the reasons.

## VI. Conclusion

The Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Acting Commissioner and against Jasminka Masinovic and close the case.

**Ordered** in Jacksonville, Florida, on March 30, 2022.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*